RENDERED: OCTOBER 29, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0625-MR

ROGER SMITH                                               APPELLANT

|  | APPEAL FROM LAUREL CIRCUIT COURT |
|---|---|
| v. | HONORABLE GREGORY A. LAY, JUDGE |
|  | ACTION NO. 19-CI-00605 |

DOUG BENNETT, IN HIS OFFICIAL CAPACITY AS
SUPERINTENDENT OF LAUREL COUNTY
SCHOOLS; BOARD OF EDUCATION OF LAUREL
COUNTY, KENTUCKY; JAMES L. DICKINSON, IN
HIS OFFICIAL CAPACITY AS HEARING OFFICER;[1]
AND WAYNE D. LEWIS, JR., IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF EDUCATION,
KENTUCKY DEPARTMENT OF EDUCATION            APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

---

[1] James L. Dickinson filed a brief in this Court but argued he should be dismissed as a party to this appeal. He was dismissed in the underlying case and Appellant Smith does not seek reversal of the circuit court order doing so, but argues Dickinson is an indispensable party to this appeal. Because Smith is prevailing as to all his arguments, we conclude Dickinson's status as a party to this appeal is a moot question and we decline to rule on it.

ACREE, JUDGE:  Roger Smith appeals the Laurel Circuit Court's April 15, 2020 Order and Judgment (Record (R.) at 142-48) in favor of the Board of Education of Laurel County, Kentucky (Board), ruling that the continuing service contract between the parties (the Laurel Contract) was unenforceable as a matter of law because Smith executed it "after breaking his tenure status by working only 139 days in Mercer County."  (R. at 144 (citing Kentucky Revised Statutes (KRS) 161.720(2))).  We conclude the circuit court based its ruling on the wrong statute.  Applying the correct statute, KRS 161.740(1)(c), yields the opposite result– Smith's tenure never terminated, and the contract remains enforceable.  Therefore, we reverse the Order and Judgment and remand the case for further proceedings consistent with this Opinion.

The facts are not in dispute.  "Smith established tenure in the Lincoln County Schools[;] this is uncontested."  (R. at 143.)  "After leaving Lincoln County Schools, he was employed by the Fayette County Public Schools for one year, at the Mercer County Schools for two years, at the Bourbon County Schools for one year (under a limited contract) and[,] before being employed by the Laurel County Schools[,] had been employed . . . in the Clark County School District."  *See* Board's Appeal from Administrative Agency Decision and Petition for Declaration of Rights, Exhibit 3 (R. at 16-17.)

On July 1, 2017, the parties executed a "Limited Probationary Contract of Employment (Portable Tenure Contract)" for Smith to teach in the Laurel County Public Schools for the 2017-2018 school year. (R. at 138-39.) After satisfactorily performing the probationary contract, on July 1, 2018, the parties agreed to a "Continuing Contract of Employment" for the 2018-2019 school year which "shall be continued from year to year . . . ." (R. at 140-41.)

On May 1, 2019, Appellee Doug Bennett, Laurel County School Superintendent, wrote to Smith that his contract would not be renewed for the 2019-2020 school year. (R. at 12.) Smith sought administrative review of the dispute in a tribunal of the Kentucky Board of Education which concluded "Smith had a 'continuing service contract' (tenure)" with the Board. (R. at 8.)

As the party aggrieved by that decision, the Board sought relief in circuit court, claiming "Defendant [Smith] lost his tenured status" before executing the Laurel Contract, and challenging "the validity of the underlying contract itself." (R. at 7.) The Board based its petition and appeal to the circuit court on the following argument:

> "Tenure" . . . is a legislative act or right, not a contractual right, and the parties could not enter into a contract that is contrary to Kentucky law or rights granted by statute or contrary to the legislative grant of Continuing Service Contracts ("Tenure") because Smith was not employed for one (1) school year in the Mercer County Schools and did not attain the legal requirements for continuing service

-3-

contract status or tenure by working in any school district for four (4) continuous years thereafter.

(R. at 7.) Persuaded by this argument, the circuit court granted the relief the Board sought. However, both the Board and the circuit court confuse the requirements for attaining tenure with what must be found to have occurred before a teacher's tenure, or continuing service status, is terminated.

We start our analysis by quoting that portion of the circuit court's Order and Judgment containing its reasoning for finding the Laurel Contract unenforceable. The circuit court said:

> KRS 161.720(2) states, "The term 'year' as applied to terms of service means actual service of not less than seven (7) school months within a school year. . . ."
>
> . . . .
>
> Smith established tenure in Lincoln County Schools[;] this is uncontested. Then he went to Fayette County for one year and his employment was non-renewed. Smith was not employed in any school district until October 8, 2013 by the Mercer County Schools; the [c]ourt understands that teachers usually begin their contract work days in August of each year. [B]ecause of the late hiring Smith was able to work only 139 days.
>
> It is undisputed that in Kentucky, teachers are required to work 140 days of a minimum of six (6) hours per day for the employment to count as a "year" of teaching experience. The [c]ourt finds that it is undisputed that Smith worked 139 days during the 2013-2014 school year in Mercer County; he then worked a full school year in Mercer County. After Mercer County, Smith taught in Bourbon County one year, Clark County one year, and

then in Laurel County for two years. He did not reestablished [sic] tenure in the same school district after breaking his tenure status by working only 139 days in Mercer County.

(R. at 143-45.) As we explain, these paragraphs reveal the circuit court's legal error, as do its citations to inapplicable authority addressing the attainment of tenure, not its portability from one district to the next. (*See* R. at 145-46 (citing KRS 161.740(1)(b);[2] quoting *Board of Educ. of Bellevue v. Rothfuss*, 639 S.W.2d 545, 547 (Ky. 1982) (teacher never attained tenure; part-time contract "could not be used in computing tenure, he was not eligible for a continuing contract."))).

Just as the Board points out,[3] a school year as defined by KRS 161.720(2) is significant for purposes of determining the four years necessary to attain tenure under KRS 161.740(1)(b). *See Rothfuss*, 639 S.W.2d at 546 (for each of four years necessary to achieve tenure, a teacher must "accrue a year's eligibility toward a continuing service contract (KRS 161.740(1)(b); KRS 161.720(2)"). However, as our analysis reveals, the *portability* of tenure status is not measured by how long the teacher works in a particular school year, but by how long the tenured teacher goes without working before employment in another district.

---

[2] Mistakenly cited in the Order and Judgment as KRS 161.740(1)(h).

[3] The Board cites an Opinion of the Kentucky Attorney General (1976-278) stating "a year *for tenure consideration* is . . . one hundred and forty school days . . . ." (Board's Appellee brief, pp. 7-8 (emphasis added)).

Our analytical focus is on the *portability* of Smith's tenure status from one school district to the next. Thus, we must interpret and apply legislation addressing the issue. "We review de novo issues of statutory interpretation and application, and in doing so our duty is to effect the intent of the legislature." *City of Villa Hills v. Kentucky Retirement Systems*, 628 S.W.3d 94, 103 (Ky. 2021). Understanding teacher-tenure portability requires examining how our statutes have addressed the concept of tenure generally as it evolved over time.

Teacher tenure predates the Kentucky Revised Statutes and has always been known by the less common term "continuing service status." 1942 Ky. Acts ch. 113, § 1. Now, we use the terms interchangeably. Eighty years ago, a teacher attained continuing service status if he was "qualified as to certification" and "taught for at least four years . . . ." *Id.* at § 3.

Tenure was not automatically portable then. The tenured teacher would have to teach in a subsequent district for two years, after which the tenured teacher could claim the right to a continuing contract, rather than a limited contract. *Id.* However, the board of education in the subsequent district could approve continuing service status "at the time of employment or at any time within the two-year period." *Id.* Conversely, even after the teacher who attained continuing service status in a prior district served two years in a subsequent district, continuing service status would be lost if four-fifths of the subsequent

district's board rejected the superintendent's recommendation for a continuing contract. *Id.*

In 1944, those rules were re-codified as KRS 161.740. 1944 Ky. Acts ch. 98, page 181. In that process, the legislature granted to the original board (where continuing service status is initially sought) the same power to reject tenure status by a four-fifths vote as enjoyed only by the subsequent board under the statute's prior version. *Compare* 1944 Ky. Acts ch. 98, page 181 (as codified in KRS 161.740(1)(b), (c), and (2) (1944)) *with* 1942 Ky. Acts ch. 113, § 1.

The 1954 amendments to KRS 161.740 retained the four-fifths vote veto power for the board of the original district but took it away from the board of the subsequent district. *Compare* 1954 Ky. Acts ch. 60, page 147 (*see within the Act* KRS 161.740(1)(c)) *with* 1944 Ky. Acts ch. 98, page 181 (*see within the Act* KRS 161.740(1)(b), (c), and (2)). The change meant greater portability and protection of a teacher's tenured status. However, ten years later, the pendulum would swing back again, making tenure portability more difficult.

The legislative session in 1964 strived for clarification in teacher tenure law. As for tenure itself, the legislature decided it was no longer enough if a teacher taught in "a" school district for four years sometime in the unspecified past. Beginning in 1964, those four years had to be in the same district and either be four consecutive years or four non-consecutive years within the previous six.

1964 Ky. Acts ch. 41 § 3, pages 159-60 (amending KRS 161.740(1)(b)). In substance, that remains the law today. *See* KRS 161.740(1)(b).

As for portability, it became more difficult to retain tenure status previously attained in a prior school district. Beginning in 1964: "When a teacher has attained continuing contract status in one district and becomes employed in another district, said teacher shall resume probationary status and shall become eligible for continuing contract status only upon fulfilling the requirements of KRS 161.740(1)(a) and (b)." 1964 Ky. Acts ch. 41 § 3, page 160 (amending KRS 161.740(1)(c)). That is, the teacher had to start all over and satisfy, in the subsequent district, the same requirements for attaining tenure in the first district– at least four consecutive, or four years employment out of six in the subsequent district. But, after ten more years, the pendulum again would swing back in the other direction.

In 1974, the default probationary status and start-all-over-again approach of the statute's 1964 version was rejected and replaced by one that seemed to be more favorable to portability. Beginning in '74, a teacher with continuing service status who became employed "in another district . . . *shall retain that status* provided, however, that a district may require a one-year probationary period of service in that district before granting that [continuing service] status." 1974 Ky. Acts ch. 185 § 1, page 381 (amending KRS

161.740(1)(c) (emphasis added)).  The default position was that tenure was automatic in the subsequent school district unless the board elected–note use of the permissive "may"–to identify the first year as probationary, after which tenure would be recognized and a continuing service contract entered for the second year.

This portability protection proved illusory.  In 1977, when a teacher claimed tenure in Owsley County, the school board found a way to deny it.  In *Carpenter v. Board of Education of Owsley County*, the teacher "undoubtedly attained continuing service status . . .  in the Fleming County School District."  582 S.W.2d 645, 646 (Ky. 1979).  He taught there "for six successive school years *until his resignation* in 1972."  *Id.* at 645 (emphasis added).  He then taught for a year in Bracken County before his employment for three years by the Board of Education of Owsley County.  *Id.* at 645-46.  But his claim to a continuing contract the next year turned out not to be protected by newly amended KRS 161.740(1)(c).

The Supreme Court held that his continuing service status ended by operation of KRS 161.720–a definitions statute and the same statute relied upon by the Laurel Circuit Court in this case.  As it does today, that statute defined "continuing service contract," in pertinent part, as:  "a contract for the employment of a teacher which shall remain in full force and effect until:  (a) The teacher resigns . . . ."  KRS 161.720(4)(a).  As noted, the teacher in *Carpenter* resigned before taking his next teaching position in Bracken County and that was that, said

the Supreme Court. Applying KRS 161.720(4)(a), the Court held his resignation terminated his tenure. He taught only one year in Bracken County and never re-attained tenure there or in Owsley County. *Carpenter*, 582 S.W.2d at 646 (teacher failed "to comply with KRS 161.740(1)(b) anew.").

Obviously, the *Carpenter* Court recognized the draconian nature of its ruling because it immediately said this:

> We remind those who may find this result unsatisfactory that "(o)ur function in interpreting statutes is limited to analyzing and applying what the legislature has said, and does not extend to psychoanalyzing the legislature and applying what it may have meant to say. Cries for modification should be addressed to the legislature." *Apache Coal Co. v. Fuller*, Ky., 541 S.W.2d 933, 935 (1976).

*Id.* at 646. Apparently, someone heeded the advice to cry for modification.

In 1982, at the second legislative session after *Carpenter* was rendered, the Legislature supplemented KRS 161.740(1)(c) with new language that would prohibit *Carpenter*-based use of KRS 161.720 to deprive a teacher of continuing contract status. 1982 Ky. Acts ch. 401 § 1, page 1358. This amendment made tenure portability more secure than ever by adding the following relevant language:

> For purposes of this subsection, the continuing contract of a teacher shall not be deemed to have terminated when the teacher leaves employment, *all provisions of KRS 161.720 to 161.810 to the contrary notwithstanding*, and the continuing service contract shall be transferred to the next

-10-

school district, under conditions herein set forth, for a period of up to seven (7) months from the time employment in the first school district has terminated.

*Id.* (supplementing KRS 161.740(1)(c)) (emphasis added).

This supplemental language rejected *Carpenter*'s definitions-based resolution by excluding KRS 161.720 and all statutes other than KRS 161.740 from the portability calculus while leaving unaffected its holding that "limit[ed] the availability of KRS 161.740(1)(c) to those teachers who currently hold tenure at the time of their employment in another district." *Carpenter*, 582 S.W.2d at 646. This prohibition remains in the current version of the statute.

Since 1982, there have been only minor changes. Today, the teacher tenure portability language relevant to the instant case is as follows:

> When a teacher has attained continuing contract status in one (1) district and becomes employed in another district, the teacher shall retain that status, . . . . However, a district may require a one (1) year probationary period of service in that district before granting that status. For purposes of this subsection, the continuing contract of a teacher shall not be terminated when the teacher leaves employment, *all provisions of KRS 161.720 to 161.810 to the contrary notwithstanding*, and the continuing service contract shall be transferred to the next school district, under conditions set forth in this section, for a period of up to seven (7) months from the time employment in the first school district has terminated.

KRS 161.740(1)(c) (emphasis added). The Legislature clearly intended that no other statute from KRS 161.720 to KRS 161.810 was to bear on the determination

of portability of a teacher's continuing service status. By deciding the issue based on KRS 161.720(2), the circuit court in this case contravened that legislative intent.

KRS 161.740(1)(c) says, "the continuing contract of a teacher shall not be terminated when the teacher leaves employment" and "the continuing service contract shall be transferred to the next school district," but that does not mean tenure is portable forever. The limiting language is found a few lines later. The continuing contract, and the consequent period of portability, lasts "for a period of up to seven (7) months from the time employment in the first school district has terminated." *Id.* This time-frame would require a tenured teacher who ended employment at the end of a school year to retain tenure by being hired before the mid-year point, around winter break, of the succeeding school year.

Now that we fully understand teacher-tenure portability, applying it to the facts of this case is simple. We are somewhat hampered, however, because the only teacher contracts in this record are the probationary and continuing service contracts between the parties. However, that does not prevent a thorough application of the facts that have been repeatedly agreed and relied upon by the parties, the lower court, and the administrative tribunal.

When Smith left the employ of Lincoln County Public Schools, no more than the summer of 2012 could have elapsed before he was employed as a teacher in Fayette County Public Schools–roughly three (3) months.

After Smith left Fayette County Public Schools at the end of the 2012-2013 academic year, he did not begin employment with Mercer County Public Schools until October 8, 2013. Although we cannot determine precisely the lapse of time between the end of the 2012-2013 school year and that date, we can determine with confidence that it was far less than seven (7) months. For seven (7) months to have elapsed before Smith was employed by Mercer County Public Schools, the Fayette County Public Schools' academic year would have to have ended around March 8, 2013. It cannot be argued rationally that it did.

There is no evidence to contradict the proof that Smith was employed during the full academic years from 2014 to 2017 at each of the various schools before the Board hired him. Therefore, during that period, there was never more than a 3-month lapse of Smith's employment as a teacher who had attained continuing contract status.

The Board obviously knew KRS 161.740(1)(c) permitted it to "require a one (1) year probationary period of service in that district before granting that status" of continuing service. The record indicates it was the only board to elect that option, which it did when it executed the "Limited Probationary Contract of Employment (Portable Tenure Contract)" with Smith on July 1, 2017. There is no evidence the Board was unsatisfied with Smith's performance or that he had engaged in conduct to justify his termination. By operation of KRS 161.740(1)(c),

Smith was entitled to continuing contract status and the Board agreed to that continuing contract beginning July 1, 2018.

Having resolved the portability and retention of Smith's continuing service status in accordance with KRS 161.740(1)(c), the Court next concludes the Laurel Contract is enforceable and Smith is entitled to rely on it. Now, we can apply the definitions section to conclude the Laurel Contract "shall remain in full force and effect until: (a) The teacher resigns or retires; [or] (b) The contract is terminated or suspended as provided in KRS 161.790 and 161.800 . . . ." KRS 161.720(4)(a)-(b) (subsection (4)(c) is inapplicable under these facts).

When Superintendent Bennett, as the Board's agent, wrote to Smith on May 1, 2019, denying him the rights the Laurel Contract grants him to teach in the Laurel County schools, the Board breached that contract.

<u>CONCLUSION</u>

For the foregoing reasons, the Laurel Circuit Court's April 15, 2020 Order and Judgment is reversed and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Peter J. Jannace
Louisville, Kentucky

BRIEF FOR APPELLEES BOARD
OF EDUCATION OF LAUREL
COUNTY AND DOUG BENNETT:

Larry G. Bryson
London, Kentucky

BRIEF FOR APPELLEE JAMES L.
DICKINSON:

Matthew F. Kuhn
Heather L. Becker
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Larry Bryson
London, Kentucky